

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 6238 | DATE | 6/26/2002 |
| CASE TITLE | KADREON HUGHES vs. KENNETH DOBUCKI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Kandreon Hughes' Petition for Writ of Habeas Corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 27 2002 | |
| | Notified counsel by telephone. | | date docketed | 16 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 02 JUN 26 PM 6:25 FILED-ED TO Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. KADREON HUGHES, | ) ) ) | |
| Petitioner, | ) ) | Case No. 98 C 6238 |
| v. | ) ) ) | Hon. John W. Darrah |
| KENNETH DOBUCKI, Warden, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on prisoner Kadreon Hughes' ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 against Kenneth Dobucki, Warden of the Graham Correctional Center, Hillsboro, Illinois. For the following reasons, Hughes' Petition is denied.

## BACKGROUND

On November 28, 1990, Bobbie Bannister ("Bannister") and his friend, Wash Gooden ("Gooden"), went to a gas station located at Pulaski Road and Chicago Avenue in Chicago. At the gas station, Bannister saw Larry Gardner ("Gardner"), Petitioner's co-defendant, and Yamasko Simmons ("Simmons"). Gooden told Gardner to meet him later at a cocktail lounge without Petitioner and Simmons.

When Bannister and Gooden arrived at the cocktail lounge, Gardner was there alone and asked Bannister to jump start his car. Bannister left his car running and went to a store to

borrow jumper cables. While Bannister and Gooden were standing in front of the store, two armed men wearing ski masks, in clothes that looked like those of Petitioner and Simmons, approached them. Gooden paused for a moment; and, as he turned to go back into the store, Simmons fatally shot him as Petitioner stood next to Simmons.

Bannister ran back to the cocktail lounge; and, from there, he saw Simmons and Petitioner going through Gooden's pockets. Bannister took out his own gun and exchanged fire with Simmons and Petitioner. Simmons and Petitioner drove away in Bannister's car. Bannister then disposed of his own gun in a trash can before the police arrived on the scene.

Initially, Bannister did not tell the police that one of the armed men was the Petitioner or that he had thrown his gun away before the police arrived. Two days later, Bannister showed police where he had thrown his gun and described Simmons by name and Petitioner by physical description only.

Petitioner was then interviewed by a police officer after being read his *Miranda* rights. Petitioner stated that he had no knowledge of the shooting. Petitioner was then placed in a line-up, in which Bannister identified him. Petitioner then incriminated himself in a statement to the officer.

Following a jury trial, on July 21, 1992, Petitioner was found guilty of first-degree murder and armed robbery. On July 21, 1992, he was sentenced to concurrent terms of imprisonment of forty-two years and twenty-five years on the murder and armed robbery convictions, respectively.

Petitioner appealed his conviction to the Illinois Appellate Court. Petitioner raised two grounds in his appeal: (1) he was improperly convicted of murder and armed robbery because the jury returned a general verdict of guilty of murder; and (2) the sentencing court abused its discretion in sentencing him to forty-two years imprisonment for first-degree murder because he was found guilty on a theory of accountability, was nineteen years old at the time of the offense, and lacked a substantial criminal history. On October 6, 1994, the Illinois Appellate Court affirmed the convictions and sentence. Petitioner did not file a petition for leave to appeal to the Illinois Supreme Court.

On November 17, 1995, Petitioner then filed a *pro se* petition for post-conviction relief in the Circuit Court of Cook County pursuant to the Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1 *et seq*. Petitioner raised the three following issues: (1) he was denied his Sixth Amendment right to effective assistance of counsel where trial counsel failed to request a suppression hearing to determine the voluntariness of his confession, to file certain motions, and to object to the trial court's denial of a request by the jury to be given certain evidence; (2) the trial court submitted his confession to the jury without determining whether his confession was voluntary as required by the Fifth and Fourteenth Amendments; and (3) the trial court abused its discretion by denying the jury's request to review a transcript of a witness and co-defendant's statement.

On December 1, 1995, the trial court dismissed Petitioner's petition because it was untimely and, alternatively, that Petitioner's claims were waived because they could have been raised on direct appeal. Petitioner appealed the dismissal of his post-conviction petition to the

Illinois Appellate Court, arguing that he was entitled to an evidentiary hearing on his substantive claims and that the trial court erred in finding his post-conviction petition untimely since the delay was attributable to prison lock-downs, which denied him access to the law library. On November 10, 1997, the Illinois Appellate Court affirmed the dismissal.

On July 17, 1997, Petitioner filed, *pro se*, a petition for leave to appeal to the Illinois Supreme Court. In that petition, Petitioner raised the following issues: (1) that he is entitled to an evidentiary hearing to determine whether the policeman who interrogated him, Detective Kato, violated the Fifth Amendment by continuing to question Petitioner after he invoked his right to remain silent; (2) that he is entitled to an evidentiary hearing to determine whether the interrogation satisfied due process; (3) that he was denied his constitutional right to effective assistance of counsel where trial counsel failed to file a motion to suppress his statement to the police; and (4) the trial court erred in finding that his post-conviction petition was untimely because the delay was not attributable to Petitioner's culpable negligence. The Illinois Supreme Court denied this petition on October 1, 1997.

On or about October 1, 1998, Petitioner filed, *pro se*, a petition for a writ of habeas corpus with this Court. Petitioner raised four grounds for relief: that (1) he is "entitled to an evidentiary hearing to determine whether Detective Kato violated the Fifth Amendment by interrogating him after Petitioner invoked his right to remain silent"; (2) he is "entitled to an evidentiary hearing to determine whether Detective Kato's interrogation technique comported with [d]ue [p]rocess"; (3) he was "denied his constitutional right to effective assistance of counsel because trial counsel failed to file a motion to suppress his statement prior to the

commencement of trial;" and (4) "the trial court erred in finding that [Petitioner's] post-conviction was time-barred because the delay was not due to [Petitioner's] culpable negligence and because the prison lock down violated [Petitioner's] constitutional right of meaningful access to the courts." (Pet. Writ Habeas Corpus at 10.)

## LEGAL STANDARD

A federal court will not grant habeas corpus relief on any claim adjudicated on the merits by a state court unless: (1) the state court applied a United States Supreme Court doctrine unreasonably to the facts of the case or (2) the state court's decision relied on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (2001). For relief based on an unreasonable application of Supreme Court doctrine, the state court's decision must be both incorrect and unreasonable. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

Petitioner must satisfy two requirements to avoid procedural default before a court may reach the merits of his habeas corpus petition: (1) exhaustion of state remedies and (2) fair presentment of any federal claims. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000)(citations omitted). A habeas corpus petitioner exhausts all state remedies when (1) he presents his claims to the highest court for a ruling on the merits or (2) state remedies are no longer available to the petitioner at the time his federal habeas petition is filed. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991)(citations omitted). "For a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). "If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims

are procedurally defaulted. *Rodriguez*, 193 F.3d at 917 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

## ANALYSIS

Petitioner's claims that his confession was obtained in violation of the Fifth Amendment and due process and that his trial counsel was ineffective were not raised in Petitioner's direct appeal but only in Petitioner's post-conviction petition.

Respondent argues that these claims have been procedurally defaulted because they rest on an independent and adequate state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996). In Petitioner's appeal of the dismissal of his post-conviction petition, the Illinois Appellate Court held that these issues were waived because the alleged violations were apparent from the trial record and Petitioner did not raise them on direct appeal. Under Illinois law, "all matters which could have been raised on direct appeal are procedurally barred and may not be considered in subsequent proceedings." *People v. Keener*, 275 Ill. App. 3d 1, 5 (1995) (citing *People v. Albanese*, 125 Ill. 2d 100, 105-06 (1988)).

A state procedural rule is adequate if it is "firmly established and regularly followed". *James v. Kentucky*, 466 U.S. 341, 348-49 (1984); *see also Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990) (holding that state courts must act in a consistent and principled way for a state procedural ground to be adequate). The rule barring further consideration of all matters not raised on direct appeal has been in effect and applied since, at least, 1988. *See People v. Albanese*, 125 Ill. 2d 100 (1988). Moreover, it has been the rule since, at least, 1985

that when evidence concerning the effectiveness of trial counsel is contained in the record but is not raised on direct appeal, ineffective assistance of counsel claims are waived. *See People v. Jones*, 109 Ill. 2d 19, 23-24 (1985). Thus, this rule is firmly established and regularly followed.

Illinois law also provides one exception to this procedural rule: "[a]n ineffective-assistance claim will not be barred if 'what ought to have been done *** [depends] on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation.'" *Keener*, 275 Ill. App. 3d at 5 (quoting *People v. Erickson*, 161 Ill. 2d 82, 87-88 (1994)). Petitioner was represented by different counsel at the trial and appellate stages of his case. The failure to include an ineffective assistance of counsel claim in his direct appeal is not attributable to the allegedly deficient representation because trial counsel did not prepare Petitioner's direct appeal. Moreover, trial counsel's failure to move to suppress Petitioner's confession should have been obvious to Petitioner's appellate counsel. However, Petitioner's claim that trial counsel was ineffective for failing to move to suppress his confession was not raised at that time. Therefore, these grounds have been procedurally defaulted.

Once procedural default has been established, Petitioner may still present those claims in federal court under § 2254(d) if he can demonstrate (1) cause for his default and (2) actual prejudice as a result of the alleged violations of federal law. *Steward*, 80 F.3d at 1211-12. Petitioner can show cause "by showing that 'some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule.'" *United States ex rel. Taylor v. Barnett*, 109 F. Supp. 2d 911, 920 (N.D. Ill. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Alternatively, the petitioner can present his claims if he can show that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman*, 501 U.S. at 750. Under *Schlup v. Delo*, 513 U.S. 298, 315, 327 (1995), a fundamental miscarriage of justice has occurred when the petitioner can show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent". "Accordingly, without new evidence of innocence, even a meritorious constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim." *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001) (citing *Schlup*, 513 U.S. at 316).

Petitioner raises the issue of lock-downs at the prison where he was incarcerated with regard to the delay in filing his post-conviction petition. However, Petitioner does not argue that lock-downs or any other objective factor external to the defense impeded his efforts to present the defaulted grounds for relief on direct appeal. Moreover, Petitioner has not presented any new evidence that would suggest that he is innocent. Therefore, Petitioner has not made a showing sufficient to survive a procedural default under § 2254(d).

Petitioner's final ground for relief is that the lock-downs that contributed to the delay of his post-conviction petition denied him his constitutional right to meaningful access to the courts. Inmates have a constitutional right to meaningful access to the courts. *See Bounds v. Smith*, 430 U.S. 817 (1977).

Although Petitioner styles the delay attributable to the lock-downs as a constitutional violation, Petitioner argues in his supporting memorandum that the appellate court should have remanded his post-conviction petition for a determination of whether the petition was time-

barred because the delay was attributable to lock-downs at the prison and not to Petitioner's culpable negligence.

The Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1(a) (2002), provides for proceedings for imprisoned persons who assert that there was a substantial denial of their rights under the United States or Illinois constitutions, or both, in the proceedings that resulted in their convictions. The Post-Conviction Hearing Act also provides that such actions shall not be commenced

> more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner, *unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.*

§ 5/122-1(c) (emphasis added). The crux of Petitioner's argument is that the trial court erred by not considering whether the lock-downs were sufficient to show that the delay was not due to his culpable negligence, an application of Illinois law. However, habeas relief is only appropriate when the petitioner's custody violates the laws, treaties, and Constitution of the United States. *See Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997). Insofar as Petitioner is raising the issue of misapplication of Illinois law, an error of state law is not the proper basis for issuing a writ of habeas corpus. *Gonzalez*, 127 F.3d at 621 (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)).

However, "[f]ederal habeas corpus review cannot remedy an error in a state collateral proceeding where the error has nothing to do with the reason for a defendant's confinement".

*Zamora v. Pierson*, 158 F. Supp. 2d 830, 836 (N.D. Ill. 2001) (citing *Jackson v. Duckwork*, 112 F.3d 878, 879 (7th Cir. 1997)). Petitioner's claim regarding the lock-downs challenges not his confinement but rather the conditions of that confinement because Petitioner does not seek his release from custody based on the denial of his right of meaningful access to the courts but rather because of the grounds for relief enumerated above. *See Zamora*, 158 F. Supp. 2d at 836; *see also Pischke v. Litscher*, 178 F.3d 497, 499 (7th Cir. 1999) ("[T]he proper vehicle for presenting [a] claim is habeas corpus . . . if but only if the prisoner is seeking to 'get out' of custody."). Thus, this claim is properly cognizable under 42 U.S.C. § 1983 (2002)[1]. *See Pischke*, 178 F.3d at 500. Moreover, it should be noted that the state court denied post-conviction relief on the alternative ground of waiver. Therefore, Petitioner's Petition for a Writ of Habeas Corpus is denied.

## CONCLUSION

For the reasons stated herein, Kadreon Hughes' Petition for Writ of Habeas Corpus is denied.

**IT IS SO ORDERED.**

Date: June 26, 2002

John W. Darrah, Judge
United States District Court

---

[1] Section 1983 provides for civil actions against any person who, under color of law, deprives another of any right secured by the Constitution and laws. 42 U.S.C. § 1983. Any claim that conditions of confinement caused a denial of any right or privilege guaranteed by the Constitution are properly raised in a § 1983 action. *See Pischke*, 178 F.3d at 500.